# Day *versus* Ridgway & Budd.

1. A waiver, by an endorser of a negotiable note, of notice of protest, puts the endorser in the same situation as if the protest had been made and notice of it duly given to him; and where there is no contradictory evidence as to the waiver, it is proof of demand and refusal.

2. Where the time of payment of a note has been extended beyond maturity by the agreement of the endorser, an averment in the declaration, in a suit against the endorser, of protest of the note and notice to the endorser, is a formal part of the declaration, and will be considered as proved.

3. The endorser of a protested negotiable note, has no right to require the holder to sue the drawer, under the penalty of the endorser being discharged in case of non-compliance: it is his duty to take up the note.

ERROR to the Common Pleas of *Montgomery county*.

This was an action of assumpsit by Ridgway & Budd *v.* Jacob Day, as endorser of a promissory note. The declaration contained several counts: In the first count it was alleged that the

[Day *v.* Ridgway & Budd.]

note was presented to Samuel W. Day, the drawer, who did not pay it, and that notice thereof was given to the defendant.

The second count was on a note for $1000, payable sixty days after date, at the Bank of Montgomery county, dated the 15th of March, 1845, drawn by Samuel W. Day, and endorsed by defendant below, Jacob Day, and averred that said Jacob, the endorser, by several agreements, agreed that he would extend the time of payment, and stand responsible for the payment of the said note as originally intended, and further averred, that the drawer did not pay the note, although the same was presented to him on the day when the last extension expired, of which defendant (said Jacob Day) had notice, &c.

The third count averred a promise by Jacob Day, to pay Ridgway & Budd, in consideration that Ridgway & Budd had extended the time of payment of this note, at the request of Jacob Day.

The other counts were common counts in assumpsit.

The plea was *non assumpsit*, and payment with leave. Notice of special matter was given.

To support the charge in the second count, Ridgway & Budd proved, and offered in evidence a note as follows :—

"*Flourtown, March* 15, 1845.

" $1000.

" Sixty days after date, I promise to pay to the order of Jacob Day, at the Bank of Montgomery County, one thousand dollars without defalcation, for value received.

" Credit the drawer.                   " SAMUEL W. DAY.

                                        " JACOB DAY."

Plaintiff proved endorsement by Jacob Day, also proved that Samuel W. Day, on the 27th of April, 1846, paid $100, for which he had a receipt on the back of said note.

Also read in evidence seven letters, written by Jacob Day to Ridgway & Budd, to prove that Jacob Day had agreed to extend the time of payment of said note. Here the plaintiffs below closed without offering any proof that the note was presented to drawer on the day the last extension expired, or that Jacob Day had notice that the drawer did not pay, or any evidence to support the other counts.

The first letter in the correspondence was a letter from Ridgway & Budd to Jacob Day, dated May 8, 1845, in which it was stated that they held Samuel W. Day's note for one thousand dollars, endorsed by Jacob Day, which would become due in a few days, and as Samuel W. Day has been disappointed in getting down his produce, it might not arrive in time to meet the note, and stating that if Jacob Day would be responsible for it without being protested, it would answer.

Jacob Day replied, his letter being dated May 15, 1845, and

stated that he was willing to extend the time for thirty days longer, and of course will stand responsible for the payment of the note, as originally intended.

Other letters passed between the parties, and the time for payment of the note was several times extended. In a letter from Jacob Day, dated January 25, 1846, he agreed to extend the time "for ninety days longer from date, at which former extension expired, and upon the same terms and conditions as former case."

Jacob Day, the defendant below, made the following defence:—

1. That the plaintiff, to support second count, must prove demand of drawer *when last extension expired;* and notice to Jacob Day (the endorser) within reasonable time. That plaintiffs had averred demand and refusal, and must prove it before they could recover. That if demand and notice were unnecessary, they should have so stated it in the *narr.,* and there assigned a legal and sufficient excuse.

That as to 3d count, plaintiffs had offered no evidence; that to support third count there must be a promise to pay on a good consideration, &c. These are answered by the court, in charge to jury, and formed the subject of the first bill of exceptions.

2. The defendant below averred, that after date of note, Ridgway & Budd received from Samuel W. Day (the drawer) his bill single or judgment note for $6000, as collateral security for this and other liabilities of Samuel W. Day. *That a long time after the last extension had expired (said Samuel W. Day having at the time property), Jacob Day requested Ridgway & Budd to proceed against Samuel W. Day, and they refused.* And to support the facts here averred, offered the $6000 note, dated May 8, 1845, in evidence; also the testimony of Roland Kirkpatrick, to show that it was collateral; also the letter of Ridgway & Budd, dated October 17, 1846, &c., to show request and refusal to proceed. The question of law here raised was answered by the court in charge to jury, and was the subject of the second bill of exceptions.

3. The defendant below also alleged, that the extension of time had always been given at *plaintiffs' request,* and not at the request of Jacob Day, and that after the last extension expired, *the said plaintiffs, Ridgway & Budd, gave time to the principal beyond the period contracted for by defendant, and without the knowledge or consent of said Jacob Day the defendant.*

To support the facts here averred, defendant relied upon the letters offered on both sides, as also the receipt on the back of the note, averring that in his opinion the whole facts of the case went to show that plaintiffs gave time to principal, without the knowledge or consent of Jacob Day, and had extended the time beyond the last extension of Jacob Day, upon the representations and promises of the principal alone, as shown in the letter of

Ridgway & Budd, dated October 17, 1846. The question of law here raised, was answered by the court in their charge to the jury, and formed the subject of the third bill of exceptions.

4. The defendant below also averred, that the creditors had means of satisfaction in their hands and did not retain it, but suffered it to pass into the hands of the principal.

Several points were submitted to the court below by the counsel of defendant.

The submission was as follows :—

The plaintiffs' declaration, second count, charges defendant with being the endorser of a note, payable at the Bank of Montgomery County, and avers that the endorser extended the time he was to stand responsible as originally intended; that plaintiff presented the note to drawer when last extension expired and was refused payment, of which defendant had notice; and on this count defendant asked court to charge the jury.

That in this count there is not sufficient excuse averred by plaintiff for not presenting the note; and therefore plaintiff cannot recover without proof of demand on principal, and refusal.

2. That no *excuse or justification for not· presenting* the note, can benefit the plaintiff, as he avers in his declaration generally *a demand and refusal.*

3. That the *demand and refusal and the notice to defendant,* averred by plaintiff in his declaration, are material averments; and plaintiff cannot recover without proof of such demand, refusal, and notice.

The plaintiff's declaration, third count, charges defendant with promising to pay plaintiff the money, in consideration that plaintiff "had extended" the time of payment of this note, at request of defendant; and on this count defendant asked the court to charge the jury as follows, to wit :—

4. That plaintiff cannot recover on this count without proof of the *extension of the time of payment,* and *the promise of the defendant to pay, in consideration of said extension.*

5. That the gist of the action under the second count is *the promise of defendant to pay in consideration of extension,* and that plaintiff having failed to offer any evidence of either, he cannot recover in this action.

The defendant further asked the court to charge the jury as follows, to wit :—

6. That if the jury find that plaintiff had, prior to suit, means of satisfaction in his hands, and did not choose to retain it, but suffered it to pass into the hands of Samuel W. Day, the principal, then plaintiff cannot recover.

7. That if the jury find from the evidence that Jacob Day, the defendant, requested plaintiffs to proceed against principal, and

[Day *v.* Ridgway & Budd.]

gave them notice that he would not be liable if they did not, and they refused, the plaintiffs cannot recover.

8. If the jury find from the evidence that the plaintiffs enlarged the time of payment, and without the knowledge or consent of Jacob Day, the defendant gave time to Samuel W. Day, the principal, beyond the time contracted for in the extension by Jacob Day, said Jacob Day is discharged, and the plaintiffs cannot recover.

9. If the jury find that the letters of guaranty or extension obtained by plaintiffs from Jacob Day, were obtained by misrepresentation and without consideration, then the plaintiffs cannot recover.

KRAUSE, J., charged the jury on the five points first stated by defendant, that " the matters in them have heretofore been before the Supreme Court, disclosed in the record, when this case was there, and the said court, nevertheless, decided that the plaintiff ought to recover. They are negatived, therefore, on this trial.

" The 6th of defendant's points is here affirmed, and so is the 9th, as a proper statement of the law.

" The 7th is answered by saying, there are cases where a surety may relieve himself from liability, by insisting on a suit on the instrument on which he is bound; but this case is not one of them. The course of defendant for such relief was to pay off the note and get it in his control, and then pursue the drawer. The point is negatived for this reason.

" The 8th is also negatived, for the reason that no binding contract is shown between plaintiffs and Samuel W. Day, for an extension of time.

" Defendant objects to charge of court, and asks it to be filed in writing, which is here done, and this his bill of exceptions sealed; and the errors assigned by him in due time are attached."

Verdict was rendered for plaintiffs for $1227.17.

See a report of this same case in 1 *Harris* 208.

It was assigned for error :—

1. The court erred in charging the jury, " that the matters alleged" in defendant's first five points, " had heretofore been before the Supreme Court, when this case was there, *and that the said court decided that plaintiffs ought to recover.*"

2. The court erred, charging the jury on defendant's 7th point, " that there are cases where a surety may relieve himself from liability, by insisting on a suit on the instrument on which he is bound; *but this case is not one of them.* The course of the defendant for such relief here, was to pay off the note and get it in his control, and then pursue the drawer."

3. The court erred in charging the jury on defendant's 8th

[Day *v.* Ridgway & Budd.]

point, that it is " negatived for the reason that *no binding contract is shown between plaintiffs and Samuel W. Day for an extension of time.*"

The case was argued by *Furnance*, for plaintiff in error.
*McMurtrie* and *Mulvany*, for defendants in error.

The opinion of the court was delivered January 13, by
COULTER, J.—The court below answered the first five points by stating that they had been disposed of by the Supreme Court, when the cause was here before.

This was correct.   An endorser is entitled to notice of protest of a negotiable note, because the contract is that the maker will pay at maturity; and the strict punctuality, which is the life of the commercial law, authorizes the endorser to presume that he has paid, in the absence of any notice to the contrary.   But the right to receive notice in order to make him liable, like any other right, may be waived by the endorser : *Story on Prom. Notes* 314; Williams *v.* Brobst, 10 *Watts* 111; Scott *v.* Greer, 10 *Barr* 103 ; Clark *v.* Devlin, 3 *Bos. & Pul.* 365.   The letter dated the 15th May, 1845, from the endorser to the payee, contains a distinct statement that the drawer will not be able to meet the note at maturity, but that if the time is extended for thirty days, he, the endorser, will hold himself bound.   To this the payee assents. And various other extensions of time are granted on the same terms.   This brings the case within Foster *v.* Jurdeson, 16 *East* 104, which rules that, under like circumstances, the holder was not bound to give notice.   The waiver of protest by an endorser puts him in the same situation as if the protest had been made and proved, and, where there is no contradictory evidence, it is proof of demand and refusal, which point was expressly ruled in Scott *v.* Greer, 10 *Barr.*   And why should it not ?   It is a thing omitted to be done, at the instance of the endorser, and for his own benefit.   And neither reason, justice, nor law, will permit him afterwards to turn round and say, because it was not done, no recovery can be had.   In the second count, the excuse for not demanding at maturity and protesting is specially set out.   The several extensions of time, at the request of the endorser, are averred as the reason or cause why demand was not made at maturity.   In fact, after the note had run beyond maturity, there could be no protest to affect the endorser.   His continued liability rested upon his waiver of protest and notice, and so far as the averment of it is to be considered as a formal part of the declaration in such cases, it is to be considered as if it had been proved, so that on the first count, after a full trial on the merits and verdict, this court would not disturb the judgment.   But the second count avers the excuse in a manner altogether sufficient.   So that if the first

[Day *v.* Ridgway & Budd.]

was defective in averring the demand and protest, the second cures the error. The statement in the second count, that after the last extension there was a demand, is mere surplusage, the count being perfectly good without it, and after verdict would, if necessary, be considered as stricken out. It would amount to a startling fraud, if an endorser were permitted to procure an extension of time, and then abuse the confidence and trust reposed on his word of guarantee, by setting up the extension as a liberation of himself.

When the court below told the jury that these five points had been decided by this court, when they reversed the judgment because the note and letters were not received in evidence in favor of the plaintiff below, they did not say or mean that this court had decided anything more than what was involved in those points. There is nothing in that incidental expression of which the plaintiff in error has any just cause to complain, because the court proceeds to answer the other points submitted, not involved in the first five points, nor in the decision of the Supreme Court.

The court below answer the sixth and the ninth points in favor of the plaintiff in error. These points, if the jury had thought there was sufficient evidence to sustain them, covered substantial merits. But they depended on facts, and these facts were submitted to the jury. The law arising from them, if they were proved, was given by the court to the plaintiff in error. The answer of the court to the seventh point is right. It is fully sustained by the case of Beebe *v.* The West Branch Bank, 7 *W. & Ser.* 375. The endorsers *of a protested note* cannot call on the holder to sue the drawer, and if he refuse, thereby relieve themselves of liability; it is their business to take it up and bring suit themselves. The holders of this note always treated and dealt with it as commercial paper. But, even if Samuel Day, the maker, was discharged by giving time to the endorser, it follows not that the endorser, at whose instance the time was given, was discharged because he procured the extension of time for his own benefit, as well as that of the drawer. The ninth point was properly negatived, because there was no evidence that the holder had given time to the drawer without the consent of the endorser, much less any evidence of any binding contract or agreement on the subject.

The judgment of the court below is affirmed.